# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

SAMUEL ROY ABRAM,

    Plaintiff,

v.                                Case No: 5:15-cv-375-Oc-32PRL

DAVID LEU, A. CLONTZ,
and K. BARKER,

    Defendants.
_____

## ORDER OF DISMISSAL

## I. Status

Plaintiff, a federal inmate proceeding pro se, initiated this action by filing a civil rights Complaint, which the Court construes as being filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] See Doc. 1 (Complaint). He alleges that several Bureau of Prisons employees at FCC Coleman tampered with his mail and confiscated paperwork in violation of his First, Fifth, and Eighth Amendment rights. See generally id. Plaintiff names three Defendants: David Leu, A. Clontz, and K. Barker. Id. at 2.

---

[1] Plaintiff cites 42 U.S.C. § 1983 as a means of bringing this action. See Doc. 1 at 10. However, to the extent he sues federal employees in their individual capacities, the Court construes such claims as being brought pursuant to Bivens, the federal analog to § 1983.

This case is on remand from the Eleventh Circuit Court of Appeals after it vacated this Court's September 6, 2016, Order granting Defendants' previous motion to dismiss for failure to exhaust. See Doc. 52; see also Doc. 28. On May 10, 2019, the Court directed Defendants to file a second motion to dismiss raising all arguments for dismissal that they wish to raise or otherwise respond to the Complaint. See Doc. 55. Plaintiff filed an Objection arguing that any new motion to dismiss must be limited to the exhaustion issue for which the Eleventh Circuit remanded. See Doc. 56. The Court overrules Plaintiff's Objection and finds that allowing Defendants to raise new arguments on remand is not inconsistent with the Eleventh Circuit's decision. See generally Doc. 52.

Before the Court is Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment. See Doc. 57 (Motion). Defendants seek dismissal or summary judgment, because: (a) Plaintiff failed to exhaust his administrative remedies; (b) Plaintiff fails to allege a physical injury; (c) Bivens has not been extended to provide a right of action for Plaintiff's claims; (d) Defendants are entitled to qualified immunity; and (e) Plaintiff lacks standing. See generally id. In support of their Motion, Defendants rely on exhibits filed with their prior motion to dismiss. See Docs. 20-1 through 20-4; Doc. 27-1. The Court previously advised Plaintiff that the granting of a motion to dismiss may represent an

adjudication of this case which may foreclose subsequent litigation on the matter. Doc. 55. Plaintiff filed a Response (Doc. 62; Response) and a Supplemental Response (Doc. 63; Supp. Response) to Defendants' Motion. Defendants' Motion is ripe for review.

## II. **Plaintiff's Complaint**

While not a picture of clarity, Plaintiff asserts that on October 28, 2013, while housed at FCC Coleman, Defendant Clontz intercepted some of Plaintiff's certified mail. Doc. 1 at 8. Plaintiff alleges that when Defendant Clontz attempted to question Plaintiff about the mail, Plaintiff invoked his Fifth Amendment right and refused to answer Defendant Clontz's questions. Id. According to Plaintiff, in response to Plaintiff's silence, Defendant Clontz "became enraged at [Plaintiff's] lack of cooperation" and retaliated against Plaintiff by placing him in the Special Housing Unit. Id. at 8.

According to Plaintiff, in the days following his move to the SHU, Defendant Clontz continued to withhold from Plaintiff more incoming certified mail. Id. Plaintiff alleges that Defendant Barker also confiscated "14 inches of sovereign paperwork" from Plaintiff's housing quarters. Id. at 9. He avers that this confiscation of documents occurred without due process as Defendant Barker failed to allow Plaintiff an opportunity to inventory the confiscated materials. Id. He claims that eventually, Defendant Leu "informed [Plaintiff]

3

that they were conducting an investigation" and were either going to refer Plaintiff to close management or place him back in the compound of FCC Coleman. Id. at 8 However, according to Plaintiff, Defendant Leu instead transferred Plaintiff to another prison. Id. He claims that the transfer was in retaliation for how Plaintiff responded, or failed to respond, to Defendant Clontz's questions regarding Plaintiff's incoming mail. Doc. 62 at 18.

Plaintiff alleges that Defendants violated his First, Fifth, and Eighth Amendment rights. Doc. 1 at 10. Plaintiff avers that the "'extreme circumstances' concerning the retaliatory seizing and destruction of the Plaintiff's legal work . . . constitutes an Eighth Amendment" violation. See Doc. 62 at 18. He also alleges that Defendants Barker and Clontz "conspired together to deny [ ] Plaintiff access to the Court by confiscating Plaintiff's legal work and destroying two pieces of certified mail." Id. at 19. Additionally, he appears to claim that the retaliatory transfer of Plaintiff "to a more dangerous prison . . . constitutes cruel and unusual punishment." Id. at 14. As relief, Plaintiff requests, "return of [his] personal property which was and is still in custody at Coleman USP-2," and "the $700,000.00 [Plaintiff] was asking for in Tort Claim TRT-SER-2014-06457." Id. at 10

### III. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). The Court liberally construes the pro se Plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

### III. Analysis

#### *a. Exhaustion*

In examining the issue of exhaustion, courts employ a two-step process.

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Jones v. Bock, 549 U.S. 199, 216 (2007); see Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) ("The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion, so 'the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim.'" (quoting Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015)). The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner, 541 F.3d at 1084 (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross v. Blake, the Court identified three circumstances in which an administrative remedy

6

would be considered "not available." 136 S. Ct. 1850, 1862 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The BOP provides a multi-tiered administrative grievance procedure for inmate complaints. See 28 C.F.R. § 542.10, et seq. An inmate must first attempt an "informal resolution" by presenting his claim or issue to prison staff (typically using a BP-8 form). Id. § 542.013(a). If the issue cannot be resolved informally at the staff level, the inmate can submit a formal, written Request for Administrative Remedy (form BP-9) to the Warden of the institution where he is confined. See id. § 542.14(a). For purposes of this Order, the Court refers to the "informal resolution" and the formal, written Request for Administrative Remedy to the Warden collectively as the institutional level of the grievance process. An inmate has 20 calendar days following the date of the underlying incident to complete the institutional-level procedure. Id.

7

If the inmate is not satisfied with the Warden's response at the institutional level, he may next submit a Regional Administrative Remedy Appeal (form BP-10) to the appropriate regional director within 20 calendar days of the date the Warden signed the response – hereinafter referred as the regional level of the grievance procedure. See id. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response to his appeal, he may submit a Central Office Administrative Remedy Appeal to the General Counsel within 30 calendar days of the date the Regional Director signed the response – hereinafter referred to as the central office level of the grievance procedure. Id. The appeal to the General Counsel (central office level) is the final step of the administrative process. See id. Each of these steps is generally required to satisfy the exhaustion requirement.

At any level, the coordinator may reject and return a grievance that does not meet any of the procedural requirements. 28 C.F.R. § 542.17. The inmate must be provided with written notice of the reason for rejection. If the defect is correctable, the inmate must be given a reasonable extension of time to correct the deficiency. Id. "When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection . . . to the next appeal level." Id.

Defendants argue that Plaintiff failed to exhaust his administrative remedies, because his intuitional-level remedy requests were returned without action for failure to comply with procedural rules and he failed to appeal to the regional level or central office level thereafter. Doc. 57 at 10. In support of their argument, Defendants provided printouts of the BOP's computerized administrative remedy records listing all administrative requests (institutional, regional, and central office) that Plaintiff filed between August 2008 and July 2016. See id. at 7-13 (SENTRY Printout, Administrative Remedy Generalized Retrieval). They also provide the Declaration of Caixa Santos, a Paralegal Specialist at FCC Coleman. See Doc. 27-1 at 2-4.

In his Response, Plaintiff argues that he was not obligated to exhaust his administrative remedies because they were unavailable. Doc. 62 at 5-9. Plaintiff alleges that the process was unavailable because prison officials prevented him from timely filing his institutional-level requests; thus, he could not initiate the first step of the grievance procedure. Id. He claims that once he was moved to the SHU, the unit or case manager never visited him, so he could not request a BP-8 form (request for informal resolution) or a BP-9 form (request for the Warden). Id. As such, he argues that he was unable to timely complete the institutional level of the exhaustion process, and prison officials thwarted his ability to complete the first step because "it was the responsibility of the unit

9

counselor" to provide Plaintiff with those forms. Id. at 7. In support of his unavailability argument, Plaintiff provides an "Affidavit of Truth" from inmate Charlie Buddha Bells who was housed in the SHU with Plaintiff.[2] Doc. 63 at 23. According to Bells, he witnessed Plaintiff "requesting BP-8s and BP-9s to no avail from his unit manager Panero and other staff members." Id.

Accepting Plaintiff's view of the facts as true, the Court finds that dismissal of these claims for lack of exhaustion is not warranted at the first step of Turner. See Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are question of fact that can bar dismissal at Turner's first step). Thus, the Court proceeds to the second step of the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes findings of fact.

Plaintiff was sent to the SHU on October 28, 2013. See Doc. 62 at 6. As such, Plaintiff's deadline to submit an institutional-level grievance to the Warden regarding his claims was November 17, 2013. However, the evidentiary materials demonstrate that the first institutional-level grievance Plaintiff

---

[2] Plaintiff also directs the Court to review an affidavit that Plaintiff filed in case no. 5:14-cv-142 from fellow inmate Steven Donovan Dixon. See Doc. 62 at 6. That affidavit is not a part of this record. However, the Court did review the document and notes that the contents of Dixon's affidavit are that he witnessed Plaintiff request BP-8 and BP-9 forms, but prison officials never provided Plaintiff with the forms. Abram v. Leu, et al., No. 5:14-cv-142-Oc-36PRL (Doc. 16). As such, according to Dixon, he gave Plaintiff one BP-8 form and multiple BP-9 forms.

10

submitted to the Warden once he was moved to the SHU was in February 2014. See Doc. 27-1 at 8. Notably, BOP documents indicate that on February 10, 2014, the Warden received Plaintiff's institutional-level request no. 767898-F1 regarding "confiscated sover. pwk & missing certified mail." Id. According to Santo's Declaration, institutional-level request no. 767898-F1 "was rejected on February 12, 2014, for raising more than one issue/related issue or appeal and [Plaintiff] was advised that he must file a separate request/appeal for each unrelated issue or incident report he wants to address (MLT)." Doc. 27-1 at 3. Santo further explains institutional-level request no. 767898-F1 "was also rejected for being untimely, as the request must be received within 20 days of the date of the event complained about (UTF)." Id. at 3. Santos asserts that Plaintiff failed to appeal the return of the institutional-level request no. 767898-F1 to the Regional Director or Central Office thereafter. Id.

Plaintiff argues that prison officials' refusal to timely provide him with the institutional-level forms (i.e., BP-8 and BP-9) rendered his institutional-level remedy unavailable. Nevertheless, even accepting that statement as true, the record demonstrates that Plaintiff finally obtained access to institutional-level request forms by February 10, 2014, when the Warden received institutional-level request no. 767898-F1. Although the Warden rejected request no. 767898-F1 as improperly filed and untimely, Plaintiff was still

11

required to "properly take each step within the administrative process." Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) (citations omitted). Indeed, the Warden instructed Plaintiff to refile his claims by "filing a separate request/appeal for each unrelated issue or incident report he want[ed] to address." However, Plaintiff did not attempt to properly refile his claims at the institutional level, and he does not assert that he was prevented from resubmitting his claims to the Warden once he received the Warden's rejection of grievance no. 767898-F1.

Further, and likely of more import, Plaintiff does not explain how the rejection or untimely nature of his institutional-level grievance no. 767898-F1 hindered Plaintiff's ability to appeal the Warden's rejection and complete the grievance process. Instead, he essentially argues that the Warden's finding that his institutional-level grievance was untimely relieved him of his requirement to appeal to the Regional Director and then the Central Office thereafter. Plaintiff is mistaken. Section 542.15(a) provides that [a]n inmate who is not satisfied with the Warden's response may submit an Appeal . . . to the appropriate Regional Director . . . ." 28 C.F.R. § 542.15(a). This provision allowed Plaintiff to appeal the Warden's unsatisfactory response that his institutional-level grievance was untimely, and he was required to do so to properly exhaust his administrative remedies. See Harper v. Jenkin, 179 F.3d

1311, 1312 (11th Cir. 1999) (holding that a prisoner who declined to appeal an untimely grievance failed to exhaust his administrative remedies); see e.g., Tucker v. Jones, No. 2:17-cv-133, 2018 WL 3557462, *6 (S.D. Ga. July 24, 2018) (finding that the Regional Director's finding that the plaintiff's BP-10 filing was untimely did not relieve the plaintiff of his requirement to file an appeal to the Central Office), report and recommendation adopted, No. 2:17-cv-133, 2018 WL 4688721, at *1 (S.D. Ga. Sept. 28, 2018).

The record also refutes any allegation that Plaintiff did not have access to the appropriate forms for appealing to the regional level after the Warden rejected institutional-level grievance no. 767898-F1. Indeed, the record demonstrates that the Regional Office received grievance no. 771756-R1 from Plaintiff on March 17, 2014. Doc. 27-1 at 8. While it appears that regional-level grievance no. 771756-R1 involved a "mail complaint," it was not an appeal of the Warden's rejection of the operative institutional-level grievance no. 767898-F1. Notably, according to Santos, regional-level request no. 771756-R1 "was rejected on March 18, 2014, for failure to file a request at the institutional level for the Warden's review and response before filing at the regional level (INS)." Id. at 3. In other words, instead of proceeding with the appeal of the Warden's rejection of no. 767898-F1, Plaintiff submitted a new, distinct grievance to the Regional Director. Nevertheless, even assuming the March 17, 2014, grievance

13

no. 771756-R1 was intended to be an appeal of the Warden's rejection of grievance no. 767898-F1, it is undisputed that Plaintiff never filed an additional appeal to the Central Office by April 17, 2014, within thirty days of when the Regional Director rejected grievance no. 771756-R1.

Accordingly, the Court finds that Plaintiff failed to exhaust his available administrative remedies. Even assuming prison officials initially refused to provide Plaintiff with the proper forms to initiate the institutional level of the grievance process, Plaintiff was eventually able to file a grievance with the Warden on February 10, 2014. Although that institutional-level grievance was rejected as untimely, Plaintiff was still required to complete the grievance process by submitting grievance appeals to the Regional Director and then the Central Office thereafter. He did not complete the process, and neither Plaintiff's allegations nor the evidentiary materials in the record indicate that those administrative remedies were unavailable so as to relieve Plaintiff of the obligation to exhaust. As such, the Court concludes that Defendants' Motion is

due to be granted to the extent that Plaintiff has failed to exhaust his administrative remedies as to any claim in the Complaint.[3] Accordingly, it is

**ORDERED AND ADJUDGED:**

1. Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. 57) is **GRANTED** and Plaintiff's Objection (Doc. 56) is **OVERRULED**.

2. This case is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

---

[3] The Court notes that attached to the Complaint are additional grievances that Plaintiff filed regarding the claims in his Complaint. See Doc.1 at 11-16. However, all of those grievances were filed between February 2015 and April 2015, more than two years after the October 28, 2013, incident. See generally id. Also, all of those grievances were rejected as either untimely or for failure to comply with grievance procedures. See Doc. 1 at 12, 14; Doc. 27-1 at 8. Plaintiff does not rely on these 2015 grievances to argue that he exhausted his available remedies. See Doc. 62 at 5-9. Regardless, the Court finds that these 2015 grievances would not change the Court's analysis of this issue.

Jax-7

C: Samuel Roy Abram, #11398-002
   Counsel of Record